## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QVC HK Holdings, LLC,<br>1200 Wilson Drive<br>West Chester, PA 19380-4262 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | Case No. _____ |
| v. | : | |
| | : | |
| JAMES CLARKE,<br>1048 Irvine Ave. #432<br>Newport Beach, CA 92660 | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff QVC HK Holdings, LLC ("HK") brings this action for breach of contract and for a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and § 2202, against Defendant James Clarke ("Clarke").

## INTRODUCTION

On September 11, 2012, HK entered into an Employment Agreement with Clarke ("Agreement") under which he was employed by HK and assigned to provide services to CNR Home Shopping Co., Ltd. ("CNRS") as its Chief Executive Officer, a position based in Beijing, China. The Agreement (along with its exhibits) sets forth the parties' agreements regarding Clarke's employment with HK, including how Clarke's taxes would be handled during his China assignment and the housing allowance that he would receive. As for taxes, Clarke was subject to a Tax Equalization Policy ("TEP") that was intended to ensure that the amount of taxes that Clarke paid during his China assignment would be materially the same as if HK had employed

Clarke in his home country (the United States) and his home state (California). HK, in turn, was responsible for the foreign taxes owed by Clarke on account of his assignment to China as well as the additional taxes created by the provision of certain expatriate benefits to Clarke.

Under the TEP, HK engaged an outside accounting firm (PricewaterhouseCoopers, LLC ("PwC")) to calculate the hypothetical taxes that Clarke would have owed had he been employed domestically. PwC did this initially by estimating those taxes, which were then withheld monthly from Clarke's pay. At the end of the year, when all tax returns had been filed, PwC performed a tax equalization calculation ("TEC") in which it calculated Clarke's final responsibility for hypothetical taxes. If Clarke had not paid sufficient estimated taxes during the year, it was his obligation to pay HK any additional amounts owed.

Clarke was notified each year of his TEC and any outstanding balances owed to HK. For the period from 2012 through 2015, Clarke had a deficit in his tax payments and he owes HK the amount of $145,425. To date, Clarke has not paid any of this deficit.

HK also files this action for a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and Fed. R. Civ. Pro. 57, for the purpose of determining the legal rights and obligations of the parties. Since resigning from HK on November 1, 2015, Clarke has repeatedly threatened to bring legal action against HK, including as recently as March 28, 2017, on claims related to the Agreement. Clarke has asserted that HK actually owes him payments under the TEP, that HK paid him an inadequate housing allowance because he was single and that this constitutes marital status discrimination, and that he was constructively discharged by HK based on the foregoing. While all of these claims are completely without merit, there is an existing and actual dispute between the parties relating to these claims, and HK requests that the Court enter a declaratory judgment that all of Clarke's claims lack merit.

## THE PARTIES

1.      Plaintiff QVC HK Holdings, LLC ("HK") is a Delaware limited liability company.  HK's sole member is QVC, Inc., a corporation duly organized under the laws of Delaware with its principal place of business in West Chester, Pennsylvania. Accordingly, under 28 U.S.C. § 1332(c), HK is a citizen of Delaware and Pennsylvania.

2.      Defendant James Clarke is a resident and citizen of California.  Upon information and belief, Clarke's address is 1048 Irvine #432, Newport Beach, CA 92660.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different states. Further, under 28 U.S.C. §§ 2201–2202, a justiciable controversy exists between the parties and a declaratory judgment is necessary to resolve the controversy.

4.      Venue is proper in the Eastern District of Pennsylvania pursuant to the exclusive venue clause in the Agreement.  The Agreement states:

"Applicable Law.  The Employment Agreement shall be interpreted and construed under the internal laws of the Commonwealth of Pennsylvania exclusive of choice of law principles.  Except as otherwise set forth herein, you and HK hereby consent to the exclusive jurisdiction of the state courts of the Commonwealth of Pennsylvania, Chester County and the United States Federal Court for the Eastern District of Pennsylvania in all matter arising hereunder or out of the transactions contemplated hereby."

Agreement at ¶ 15.

## FACTUAL BACKGROUND

### HK Enters Into An Employment Agreement With Clarke

5.      HK and Clarke entered into an Employment Agreement ("Agreement")
that was executed on September 11, 2012.  The term of the Agreement commenced on
July 11, 2012 and extended through December 31, 2016, unless it was terminated sooner.
Agreement at ¶ 2.

6.      Under the Agreement, Clarke's assignment was based in Beijing, China,
and he was assigned to provide services to CNR Home Shopping Co., Ltd. ("CNRS") as
its CEO (the "China Assignment").  Agreement at ¶ 1.B.

7.      The Agreement contains a provision stating that it will be "interpreted and
construed under the internal laws of the Commonwealth of Pennsylvania exclusive of
choice of law principles."  The Agreement also includes a forum selection clause stating
that the exclusive jurisdiction for "all matters arising hereunder or out of the transactions
contemplated hereby" would be with "the state courts of the Commonwealth of
Pennsylvania, Chester County and the United States Federal Courts for the Eastern
District of Pennsylvania." Agreement at ¶ 15.

8.      The Agreement incorporates by reference a Secondment Assignment
Addendum ("Addendum") as Exhibit 2.  The Agreement provides that during the China
Assignment, Clarke is entitled to participate in or receive the benefits described in the
Addendum.  Agreement at ¶ 4.

9.      Under the Addendum, Clarke's compensation and benefits are "subject to
the withholding of applicable taxes and/or social security payments required under the

4

[People's Republic of China] or U.S. federal law and the laws of any state of the United States."  Addendum at 2.

### HK's Tax Equalization Policy

10.     The Addendum provides that HK would equalize Clarke's income tax bill in such a manner that he would not be materially impacted by the changes in tax obligations as a result of the China Assignment compared to the taxes he would have owed had he been employed domestically. Addendum at 3.

11.     The Addendum states that HK would pay an outside consulting firm to conduct tax preparation and equalization services, as well as reconciliation of the hypothetical tax to an equivalent level of income taxes and social security that Clarke would have been paid had he been based at home.  Addendum at 3.  HK retained PricewaterhouseCoopers, LLC ("PwC") to conduct its tax preparation and equalization services in accordance with its policies.  PwC prepared Clarke's tax equalization services on behalf of HK annually from 2012 through 2015.

12.     The Addendum refers to HK's Tax Equalization Policy ("TEP") "for additional detail regarding tax equalization." Addendum at 3.

13.     Under the TEP, PwC calculated Clarke's "hypothetical tax."  Clarke's hypothetical tax represents an estimate of the amount of tax Clarke would have paid had he been employed in the U.S.  Under the TEP, the hypothetical tax "will include, but not be limited to, the appropriate…state…income tax based on the Home Country.  TEP at 2.

14.     The TEP states that "the last state of residence prior to the assignment is the basis for the state tax calculation." TEP at 24.  In addition, the Addendum

specifically designates Clarke's point of origin as "Newport Beach, California." TEP at 1.

15.     In calculating Clarke's hypothetical tax, PwC determined that Clarke's last state of residence prior to his assignment was California. Thus, PwC designated California as Clarke's home state for purposes of calculating his hypothetical tax calculation under the TEP.

16.     HK's use of California for hypothetical state taxes has been consistent since the start of Clarke's assignment and is reflected in his hypothetical tax withholding calculations and annual tax equalization computations.

17.     After all tax returns have been filed each year, PwC prepares a tax equalization calculation ("TEC") to compute the final hypothetical tax liability. PwC then compares the final hypothetical tax liability to hypothetical tax withholding and any actual tax withholding or estimated payment made during the tax year. Each year from 2012 through 2015, PwC shared the final TEC with Clarke through the MyTaxes Website, to which Clarke had access.

18.     Under the TEP, Clarke is responsible for reviewing the final TEC and "to promptly settle any balances due to the Company resulting from the final Tax Equalization." TEP at 4.

19.     In a series of letters sent via the MyTaxes Website each year, Clark was informed by PwC that it had prepared his annual TEC, and that Clarke owed net tax settlement payments to HK. The amount of payments Clarke owed is as follows: 2012—$1,930; 2013—$76,866; 2014—$73,138; 2015—($6,509). Clarke thus currently has a

net tax settlement balance of $145,425 due to HK under the TEP for the period 2012 through 2015.  To date, Clarke has not made any net tax settlement payments to HK.

20.     Pursuant to the TEP, "in the event of any legal action in connection with the TEP, the assignee agrees to pay all costs of collection and reasonable attorney's fees." TEP at 20.

### *HK's Long Term International Assignment Guidelines and Housing Policy*

21.     The Addendum also states that HK will provide Clarke with company subsidized housing and approved utilities, property fees/taxes in the host location, up to a maximum monetary limit of Forty-One Thousand Chinese Yuan (CNY 41,000) per month.  Addendum at 3.

22.     The amount of Clarke's housing allowance (CNY 41,000 per month) was established in accordance with QVC Inc.'s Long Term International Assignment Policy Guidelines ("Housing Guidelines").  The Housing Guidelines' provision on Host Country Housing state that "QVC will provide Host Country housing of a standard appropriate to an employee…of a similar job grade and family size in the Host Country."  Housing Guidelines at 19.  The Host Country Housing provision does not make any reference to marital status.

23.     HK provided Clarke with a housing allowance of at least CNY 41,000 per month for the duration of his China assignment.  That was all that he was entitled to under his Agreement with HK.

### *Clarke Voluntarily Resigns and Later Asserts Claims Against HK*

24.     Clarke voluntary resigned his employment with HK via an email sent on May 1, 2015 providing six months' notice to become effective on November 1, 2015.

7

This notice was provided in accordance with Section 8A of the Agreement that requires six months' notice in the event of a voluntary resignation.  Agreement at ¶ 8A.

25.     Clarke did not claim that he had Good Reason to terminate his Agreement with HK as defined in the Agreement.  Further, Clarke never provided the required notice and cure periods called for under the Good Reason provision of his Agreement. Agreement at ¶ 8C.

26.     Following his resignation, Clarke has repeatedly threatened to bring claims against HK, including as recently as March 28, 2017.

27.     First, Clarke alleges that HK misapplied its TEP in the manner in which PwC computed his hypothetical tax.  Clarke's complaint is that PwC computed his hypothetical tax amount as if he had been resident in California during his assignment.

28.     Clarke's TEP claim is based upon a fundamental distortion of the manner in which the TEP is applied.  The TEP is designed to make the executive whole from a tax perspective by treating the executive as if he had been employed in the United States and in the case of Clarke, in his home state of California.  This is precisely how PwC computed his hypothetical tax amount, and Clarke was well aware of this throughout his China assignment.  At all times, HK treated Clarke in full conformity with the TEP and Clarke paid the same amount of tax he would have paid had he remained working in California in the United States.

29.     In fact, the TEP worked greatly to Clarke's benefit.  Under the TEP, Clarke paid hundreds of thousands of dollars *less* in taxes than he would have paid without the benefit of the TEP.

30.     Second, Clarke alleges that HK misapplied its Housing Guidelines because the amount of his housing allowance would have been greater had he been married.  According to Clarke, this amounts to marital status discrimination.

31.     Clarke's housing allowance claim is totally without merit.  The Agreement entered into between HK and Clarke specified the amount of his monthly housing allowance (CNY 41,000 per month). Addendum at 3.  Clarke was paid at least this amount for the full duration of his China assignment.

32.     Moreover, the Housing Guidelines do not treat employees differently based on their marital status.  Rather, one factor in the allowance considers *the number of dependents* who will be residing with the employee as this factor obviously affects the number of rooms needed by the employee during his/her expatriate assignment.

33.     Even if marital status were a relevant factor (which it is not), Pennsylvania law—which governs here—does not include marital status as a protected class under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951–963.  Nor did Clarke ever file a complaint of discrimination under the PHRA as he is required to do before bringing a discrimination claim, and the applicable statute of limitations period has long since expired.  See 43 P.S. § 959.

34.     Third, Clarke claims that he was constructively discharged without Cause by HK or that his termination was for Good Reason under the Agreement.  The basis for these claims is the alleged marital status discrimination.

35.     Clarke's constructive discharge claim is totally without merit.  As discussed in paragraph 24 above, Clarke voluntarily gave HK six months' notice that he was resigning.  Clarke never asserted Good Reason, nor did he follow the contractual

9

procedures applicable to a Good Reason termination.  Further, as discussed in paragraphs 31-32 above, Clarke does not have a claim of marital status discrimination.

36.     All of Clarke's claims against HK are without merit, and HK requests that the Court enter a declaratory judgment in favor of HK, and its parent companies and affiliates, on each of his claims.

## COUNT I: BREACH OF CONTRACT

37.     HK incorporates the allegations in paragraphs 1 through 36 as if fully set forth herein.

38.     The Employment Agreement executed by HK and Clarke on September 11, 2012, incorporating the Addendum and Tax Equalization Policy, constitutes a valid and enforceable agreement between the Parties.

39.     Pursuant to the TEP, HK is entitled to be paid by Clarke for any balances due to HK resulting from the final TEC.

40.     Clarke has a balance of $145,425 due to HK under the TEP for the years 2012 through 2015.

41.     In breach of his contractual obligations, Clarke has failed to make these payments due under the Agreement and TEP to HK.

42.     As a result of Clarke's breach of his contractual obligations under the Agreement, HK has sustained damages.

WHEREFORE, Plaintiff QVC HK Holdings, LLC, demands judgment in its favor and against Defendant James Clarke for compensatory damages, together with interest, costs of suit, attorney's fees, and such other and further relief as the Court deems just and proper.

## COUNT II: DECLARATORY JUDGMENT
## (APPLICATION OF TAX EQUALIZATION POLICY)

43.     HK incorporates the allegations in paragraphs 1 through 42 as if fully set forth herein.

44.     The Employment Agreement executed by HK and Clarke on September 11, 2012 constitutes a valid and enforceable contract between the Parties.

45.     HK has fully complied with its obligations under the terms of the parties' Agreement, including its Addendum and TEP.

46.     Notwithstanding HK's compliance, there is a bona fide and actual dispute between the parties regarding HK's compliance with its tax obligations under the terms of the parties' Agreement, Addendum, and the TEP.

WHEREFORE, Plaintiff QVC HK Holdings, LLC respectfully prays that this Court enter judgment on its behalf (and on behalf of its parent companies and affiliates), and against Defendant James Clarke, declaring that:

(a)     The September 11, 2012 Employment Agreement, incorporating by reference the Addendum and TEP, constitutes a valid and enforceable agreement.

(b)     Pursuant to the September 11, 2012 Employment Agreement, Pennsylvania law governs this dispute.

(c)     HK has fulfilled its tax obligations under the terms of the Agreement, Addendum, and TEP, and is entitled to a declaratory judgment that it has not breached the parties' Agreement (or in the alternative, that any alleged breach was not material).

(d)     HK correctly applied the terms of the Agreement and the TEP, and was not unjustly enriched under its TEP in regards to Clarke.

11

(e)   QVC HK Holdings, LLC (and its parent companies and affiliates) shall be entitled to such other and further relief as this Court may deem proper.

## COUNT III: DECLARATORY JUDGMENT
## (APPLICATION OF HOUSING POLICY)

47.   HK incorporates the allegations in paragraphs 1 through 46 as if fully set forth herein.

48.   The Agreement executed by HK and Clarke on September 11, 2012 constitutes a valid and enforceable contract between the Parties.

49.   HK has fully complied with its obligations under the terms of the parties' Agreement, including its Addendum and Housing Guidelines.

50.   Notwithstanding HK's compliance, there is a bona fide and actual dispute between the parties regarding the housing allowance HK provided to Clarke under the terms of the parties' Agreement, Addendum, and Housing Guidelines.

WHEREFORE, Plaintiff QVC HK Holdings, LLC respectfully prays that this Court enter judgment on its behalf (and on behalf of its parent companies and affiliates) and against Defendant James Clarke, declaring that:

(a)   Clarke received the amount of housing allowance to which he was entitled under the Agreement and Addendum.

(b)   HK did not discriminate against Clarke based on his marital status in regards to his housing allowance.

(c)   Pursuant to the choice of law provision in the Agreement, Clarke's employment relationship with HK is governed by the law of the Commonwealth of Pennsylvania, which does not cover marital status discrimination.

(d)   Clarke has never filed a complaint of discrimination which is a prerequisite in Pennsylvania for bringing a claim of discrimination.

12

## COUNT IV: DECLARATORY JUDGMENT
## (CONSTRUCTIVE DISCHARGE)

51.     HK incorporates the allegations in paragraphs 1 through 50 as if fully set forth herein.

52.     There is a bona fide and actual dispute between the parties regarding whether Clarke was

constructively terminated without Cause or whether he voluntarily terminated his

employment with HK for Good Reason as those terms are defined in the Agreement.

WHEREFORE, Plaintiff QVC HK Holdings, LLC respectfully prays that this Court

enter judgment on its behalf (and on behalf of its parent companies and affiliates) against

Defendant James Clarke, declaring that:

(a)     Clarke voluntarily resigned his employment with HK.

(b)     Clarke has no basis for claiming a constructive termination or a termination for

Good Reason.


Dated: April 26, 2017

Alan D. Berkowitz (Bar No. 32735)
Rhiannon DiClemente (Bar No. 323054)
Dechert LLP
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

Attorneys for QVC HK Holdings, LLC